IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DWIGHT TROTTER                                                                         PLAINTIFF

v.                          Civil No. 4:09-cv-04080

LOUISE PHILLIPS, Jail
Administrator, Hempstead
County Detention Facility; and
LORI JONES, Nurse, Hempstead
County Detention Facility                                                          DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Dwight Trotter (hereinafter Trotter) filed this civil rights action pursuant to 42 U.S.C. § 1983. Trotter contends his constitutional rights were violated while he was incarcerated at the Hempstead County Detention Center from March 3, 2009, to September 2, 2009. Specifically, he contends his rights were violated when he was denied adequate medical care.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation. Defendants filed a Motion for Summary Judgment (Doc. 15). To assist Trotter in responding to the Motion for Summary Judgment, a questionnaire was propounded (Doc. 20) by the Court. Trotter filed a timely response to the questionnaire (Doc. 21). The motion is now before me for issuance of this report and recommendation.

## I. Background

Trotter was booked into the Hempstead County Detention Center (HCDC) on March 3, 2009. *Plaintiff's Response* (Doc. 21)(hereinafter *Resp.*) at ¶ 1. He remained incarcerated there until his release on September 2, 2009. *Id.* at ¶ 2.

On May 28th or 29th, Trotter alleges that he submitted a medical request asking for treatment because of an infection in his left leg. *Resp.* at ¶ 4. Trotter does not have a copy of this request and no one responded to his request. *Id.* Trotter maintains the request "didn't make it to the nurse." *Id.*

Trotter submitted a request for medical care on June 6th. *Resp.* at ¶ 5. He stated he had a staph infection in his left leg and under his right armpit that needed to be treated. *Id.* He also stated he had submitted a medical request the week before on May 28th or 29th and had not been seen. *Id.*

On June 8th, Louise Phillips responded to Trotter's request. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) B. She stated the previous request she had received from Trotter was for medicated soap. *Id.* She indicated she spoke with the nurse at the time and was told she didn't prescribe medicated soap. *Id.* Phillips indicated inmates were asking for medicated soap because they did not like the soap provided them. *Id.* If Trotter needed medicated soap, Phillips said the nurse would order it for him. *Id.*

Trotter states his request was for treatment because of a knot on his leg. *Resp.* at ¶ 6 & 7(C). However, he does indicate he also asked the nurse whether she prescribed medicated soap for dry skin. *Id.* at ¶ 6. Trotter maintains that because Phillips, who is not medically trained, did not handle his first sick call request properly, he asserts his leg became swollen to four times its normal size. *Id.* at ¶ 7(C). *See also Resp.* at ¶ 9(B). If proper procedures had been followed, Trotter indicates his sick call request would have been given to the nurse. *Resp.* at page 11. He maintains only medical staff are qualified to make the decision of whether or not treatment is needed. *Id.* at ¶ 9(B). Finally, he maintains Phillips has been forging paper work pertaining to his requests and grievances. *Id.* at page 11. He does not indicate what paperwork he believes is forged and has indicated the requests in the record were submitted by him.

On June 7th, Trotter submitted another request. *Resp.* at ¶ 7(A). He stated that he was getting another area of infection under his right arm (arm pit). *Id.* He stated his leg was infected and he was in serious pain. *Id.* He indicated he had been asking for help since May 28th or 29th. *Id.*

Phillips responded that Trotter's first medial complaint asked for medicated soap as a result of dry skin. *Defts' Ex.* C. Phillips had Trotter down to her office on June 8th. *Id.* Trotter showed Phillips his leg and it was decided he would be seen by the nurse that day. *Id.*

Nurse Jones did not see Trotter's request dated May 28th or 29th. *Resp.* at ¶ 9(A). Instead, she was just told by Phillips that he had requested medicated soap. *Id.* Trotter did not speak to or communicate with, Nurse Jones prior to June 8th. *Id.* at ¶ 10(A). Trotter maintains Nurse Jones exhibited deliberate indifference to his serious medical needs when she allowed non-licensed personnel to make a decision without checking on the situation first. *Id.* As a result of the delay in his receipt of medical care, Trotter maintains his leg was swollen to four times its normal size and he was in pain and could not eat or sleep because of it. *Id.* at ¶ 10(B). He indicates he would ask to be allowed out of his cell so he could run cold water over his leg to ease the pain. *Id.*

Trotter was seen by the nurse on June 8th. *Resp.* at ¶ 8. She diagnosed Trotter as having boils. *Id.* She opened and drained the one on his left leg. *Id.* He was given Cephalexin, an antibiotic, until Bactrim, another antibiotic, was received through the mail. *Id.* He was also given Ibuprofen. *Id.* Trotter received all medication prescribed to him. *Resp.* at ¶ 11.

## II.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a . . . verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  The Arguments of the Parties

First, Defendants argue Trotter cannot establish the existence of a governmental policy, custom, or practice.  They, therefore argue there are no grounds on which either Defendant can be held liable in their official capacities.  Second, Defendants maintain there is no evidence that they exhibited deliberate indifference to Trotter's serious medical needs.  They maintain Trotter did not have a serious medical condition.  Even if the boil is considered a serious medical condition, Defendants maintain Trotter received adequate medical care.

Trotter maintains he submitted a sick call request on May 28th or May 29th because of a knot on his leg.  He indicates he did also ask whether the nurse prescribed medicated soap for dry skin. Because non-medical personnel, here Phillips, handled his sick call request, Trotter maintains there

was a delay in his receipt of medical care. According to Trotter, the delay resulted in a worsening of his condition.

### IV.  Discussion

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989)(*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). "Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Gordon ex rel Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)(*citing Estelle*, 429 U.S. at 106)).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

A serious medical need is one diagnosed as requiring treatment, or one so obvious even a lay person would recognize the necessity for a doctor's attention. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). For purposes of this motion, we will assume boils constitute a serious medical condition. Trotter has alleged that his condition grew worse when he did not receive treatment in response to his medical request submitted on either May 28th or 29th. Specifically, he states his leg became swollen to four times its normal size and the pain and discomfort resulted in an inability to eat or sleep.

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

In this case, Trotter's claim is that because non-medical personnel reviewed his medical request he was denied treatment from May 28th or May 29th until June 8th. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(internal quotations and citations omitted). "To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Id.*

The only evidence in the record before me is that Trotter received treatment for boils on June 8th and was prescribed antibiotics and Ibuprofen. He received the prescribed medication and no follow-up or additional treatment was necessary. There is no verifying medical evidence suggesting that a delay in treatment had an adverse effect on Trotter's medical condition. *Laughlin*, 430 F.3d at 929.

## V. Conclusion

I therefore recommend that the Motion for Summary Judgment (Doc. 15) be granted and this case dismissed.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

**objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

      DATED this 24th day of August 2010.

                                                                   /s/ Barry A. Bryant  
                                                                   HON. BARRY A. BRYANT  
                                                                   UNITED STATES MAGISTRATE JUDGE